### In re MURRAY et al.
### Patent Appeal No. 2605.

Court of Customs and Patent Appeals.
Feb. 11, 1931.

Milans & Milans, of Washington, D. C. (Usina & Rauber, of New York City, of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner, rejecting claims 1, 2, 3, and 5 to 9, inclusive, of appellants' application, as defining nothing patentable over the prior art. The appeal as to claim 5 has been withdrawn by appellant, and therefore requires no consideration by us.

Claims 1 and 7 are illustrative, and read as follows:

"1. In electric welding by passing a current of extremely high amperage for a very short period of time, the method which consists in pressing the parts together with a pressure and current density in the ratio of about 8,000 pounds per square inch to 100,-000 amperes per square inch."

"7. In the electric welding of steel by passing a current of extremely high amperage for a very short period of time, the method which consists in pressing the parts together with a pressure which is continuous during the welding operation and is regulated according to the composition of the steel."

The reference relied upon by the Board of Appeals is: Murray, Jr., reissue No. 15,-466, October 10, 1922.

The alleged invention here in issue is described in the decision of the Board of Appeals as follows:

"The invention sought to be patented in this application is alleged to be an improvement in the process covered by the reissue patent to Murray No. 15466 of October 10, 1922, the original patents being numbered 1,-281,636 and 1,281,637 of October 15, 1918.

"This reissue patent is for a process of electric welding which consists in subjecting the bodies to be welded to a current of extremely high ampere strength and of very brief duration. As examples, it states that when a current density of 100,000 amperes is used the duration of the weld is approximately ¼ of a second and if the amperage is 50,000, the time is between two and three seconds. It is also stated and claimed that the time is in inverse proportion to the current density and that the current density is predetermined and regulated in proportion to the contact area and shape of the contacting surfaces.

"It appears from the specification of the present case that by tests made in the operation of the process of the reissue patent under various current densities it has been found that the pressure applied should increase or diminish with the current density, approximately in the ratio of 8,000 lbs. per sq. in. of surface contact to 100,000 amperes per sq. in. or, for a limited take up and a certain current density, the pressure must be between a maximum which would take up the metal faster than it is heated to a welding temperature and a minimum which would take up the metal only after it is heated beyond the welding point. It has also been found that the pressure should be varied according to the composition of the material to be welded;

that the time should be inversely proportioned to the square of the current density and that a better weld is secured by cutting off the current at about one-half the take up."

It is conceded that all of the elements of the claims are disclosed in the prior patent except the elements relating to pressure, and it is that element that it is here contended constitutes invention.

The following statement is found in appellants' specification:

"In a prior patent of Thomas E. Murray, Jr., No. 1,281,636, dated October 15, 1918, there is described a method of welding metal parts together which consists in bringing them into contact and passing through the joint a current of extremely high amperage for a very short period of time.

"Our present invention is directed to certain steps in the regulation and application of this class of welding processes by which improved results can be had.

"We find, for example, that for the best results there should be during the operation a continuous pressure exerted on the parts and regulated within certain limits and according to certain factors, particularly according to the current density, time, extent of take-up, and composition of the metal; the invention being directed particularly, but not exclusively, to steel (or iron). We have found that the time of cutting off the current plays an important part in securing a good weld.

"When high current densities are used, it is important to use high pressures to force the parts together as fast as it is heated to the proper temperature. Otherwise the metal will burn out or at least be badly oxidized at the weld.

"Similarly when high pressures are used it is important to use high current densities. Otherwise the metal at the joint will be upset and forced outward faster than it becomes heated, or before it becomes heated to the proper temperature—the result being a joint which is so weak as hardly to be called a weld. And in extreme cases the parts would not even be stuck together.

"It follows that the converse is true. When low current densities are used it is important to use low pressure, and when low pressures are used it is important to use low current densities.

"In summary, the pressure used should be in a balanced relation with the current density in order that the metal may heat to the welding temperature as fast as it is squeezed out at the edge by the pressure, and that it may be squeezed out progressively at the edge as fast as it is heated to the welding temperature.

"Practice has shown, other elements of the problem being fixed, that such a balanced relation is obtained when a pressure of about 8,000 pounds per square inch (say within a range from 4,000 to 14,000 pounds) is used with a current density of about 100,000 amperes per square inch. Practice has also shown within the limits of our apparatus, that if either the pressure or the current density be changed from the above value, the other must be changed in the same ratio; that is, about 8,000 pounds pressure per square inch must be applied for every 100,000 amperes per square inch. The above relation has been checked from 8,000 to 22,000 pounds per square inch and from 100,000 to nearly 300,000 amperes per square inch; and apparently it would remain true over a still wider range.

"We have found that for a given time interval there is a certain range of pressures above and below which a good weld is not obtained. * * *"

Appellants in their brief contend that the prior art, including the Murray reissue patent, discloses nothing that suggests or leads to the idea of appellants, and that in the prior art the degree of pressure was not considered to be of any importance.

The brief states: "After using that process [the Murray reissue process] for several years these applicants made a discovery which is the principal basis of the present invention. They discovered to their surprise (and to that of the Primary Examiner) that the degree of pressure exerted on the parts affected the quality of the welds. This is an original discovery of these applicants. In their early work the users of the original Murray process treated the pressure between the parts to be welded as a point of no particular importance as long as it was heavy enough. This is the only known rule in welding—that the operator must have at least enough pressure. How much more has been regarded as immaterial. But these applicants discovered that better and more reliable work could be done by regulating the pressure in its relation to the current and the time interval. The Murray reissue patent is based on the relation between two factors, current and time interval. The present invention is based on three factors, current, time interval and pressure."

Examination of the Murray reissue patent discloses that the foregoing statement is inaccurate. Pressure is referred to both in the specification and in one of the claims. The specification states: "As commonly practiced electric welding is a sticking together of opposing bodies by rendering their surfaces plastic or pasty and *pressing them into more or less close contact.*" (Italics ours.)

Later the specification states: "* * * Increase of pressure leads to greater extrusion of metal at the joint which is intensified when the fluidity or plasticity of the metal is augmented."

Thus it is clearly stated that pressure is an important element in the art of electric welding. There must be a minimum and a maximum of pressure which those practicing the art must observe—that is, the pressure must be regulated if good results are to be secured—and this is plainly set out in the Murray reissue patent.

While there is no disclosure in said patent of any particularly desirable pressure between the minimum and maximum necessary to secure a good weld, it is clearly pointed out that pressure is an important element in practicing the art as taught therein; and if one in so doing secures a good weld, applying pressure that comes within the degrees covered by the claims here in issue, he is entitled to continue practicing the art with such pressure applied, and cannot be deprived thereof by any subsequent patent. We agree with the statement of the Board in its decision that:

"If the claims were allowed, a skilled operator who had learned by experience to produce a good weld under the original Murray process would inevitably infringe these claims and would be prevented from practicing the process after the expiration of the reissue patent. It is our opinion that these claims cover only the inherent conditions which would exist when the old process is carried out successfully, and that they do not define patentable improvements but only involve what has been determined by ordinary engineering research as the best values of the several factors essential to its practice."

We think the above statement is applicable to all of the claims here in issue.

To grant appellants' claims would grant to them a monopoly upon certain efficient welds which a licensee under the Murray reissue patent would be entitled to make by virtue of his license, and the general public would be entitled to make after that patent had expired.

The decision of the Board of Appeals is affirmed.

Affirmed.